UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

       Plaintiff,

   vs.                  REPORT AND RECOMMENDATION

Jeffrey Lyle Fossum,

       Defendant.     Crim. No. 07-122 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the oral Motion of the Defendant Jeffrey Lyle Fossum ("Fossum") to Suppress Evidence Obtained as a Result of a Search or Seizure.

A Hearing on the Motion was conducted on June 4, 2007, at which time, Fossum appeared personally, and by Andrea K. George, Assistant Federal Defender; and the Government appeared by Tracy T. Braun, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendant's Motion be denied.

## II. Factual Background

The Defendant is charged with one (1) Count of Possession of Child Pornography, in violation of Title 18 U.S.C. §§2252(a)(4)(B), 2252(b)(2), and 2253(a).[1]  The events which gave rise to that charge are alleged to have occurred on July 20, 2006, in this State and District.  The Defendant requests that we review the Search Warrant, and the Supporting Affidavit, in order to determine if the Warrant was excessively stale, or subject to other fatal defects.  No testimony was adduced at the Hearing on the Defendant's Motion, and therefore, consistent with the Defendant's challenge to the Warrant, we limit our consideration of the Motion to the "four corners" of the Search Warrant, as well as the Application for Search Warrant and the

---

[1]At the Hearing in this matter, the Defendant orally moved to file a Motion to Suppress the Evidence that was obtained by Search Warrant.  The Government did not oppose the filing of the Motion, and the parties requested leave to submit memoranda on the legal issues that were raised by the newly submitted oral Motion.  The requested leave was granted, and the last submission, on that issue, was received on June 20, 2007.  Unfortunately, the parties failed to provide the Court with a copy of the Warrant Application, and supporting documents, which were subsequently sent, by telefacsimile, on June 21, 2007, at which time, the Motion was taken under advisement.  See, Title 18 U.S.C. §3161(h)(1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 676-77 (8th Cir. 1995).  Also at the Hearing, the Defendant orally waived his Right to a Speedy Trial.

Supporting Affidavit.  As pertinent to the charges against the Defendant, and his

Motion to Suppress, the operative facts may be briefly summarized.[2]

The challenged Search Warrant was issued by a Judge of the Minnesota District

Court for St. Louis County, on July 20, 2006, at 8:22 o'clock a.m., and authorized a

search of the Defendant's residence, which is located in Hermantown, Minnesota.

Specifically, the Search Warrant authorized a search and seizure of computer systems

and data -- including, but not limited to -- the main computer box, monitors, scanners,

printers, modems, connecting wires, cords, accessories, and/or other peripheral

devices; and computer disks, including CD-R, CD-RW, jump drives, or other storage

units.  In addition, the Search Warrant authorized a search for -- and the seizure of --

pornography, in any form or medium; any and all materials and photographs depicting

sexual conduct, nude individuals, and minors; any device capable of recording images;

---

[2]Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

indicia of occupancy of the Defendant's residence; paperwork showing membership or subscriptions to internet sites; and data contained on either hard drives or removable media, which included e-mail files memorializing contacts with minors, or chat room conversations with minors.  See, Search Warrant, at p. 1.

Attached to the Search Warrant was an Application, and Affidavit, that were executed by Michael Anderson ("Anderson"), who avers that he is a Police Sergeant with the Hermantown Police Department, and has ten (10) years of law enforcement experience, which includes numerous criminal sexual conduct investigations that resulted in the seizure of evidence in cases, and resulting criminal convictions.  In the Affidavit, Anderson averred that, on or about July 16, 2006, the Defendant's ex-wife filed a report, with the Hermantown Police Department, that she believed her daughter had been "sexually touched" by the Defendant, who is the daughter's father, while the Defendant hosted his daughter, at his residence, during a visitation.  At the same time, the Defendant's ex-wife disclosed that her thirteen (13) year old son had heard from the Defendant's ten (10) year old son, that the Defendant's daughter, approximately two (2) weeks previously, had reported that her father has carried her into his bed, after she falls asleep during visitation, and "touches her."  See, Application and Affidavit in Support of Search Warrant, ("Warrant Application") at ¶¶4-6, 8-9.

- 4 -

On July 18, 2006, Anderson drove by the Defendant's residence, and observed a vehicle, which was parked in the driveway, and which was registered to the Defendant's mother.  Later that day, the Defendant's daughter was brought to First Witness, which is a Duluth clinic that specializes in the evaluation of children who are suspected of being the victims of physical or sexual abuse.  Id. at ¶10; Government's Response to Defendant's Motion to Suppress, Docket No. 29, at p. 1.  At First Witness, the Defendant's daughter was interviewed by the staff, at which time, the interview was monitored and viewed in its entirety by Kristi Hansen ("Hansen"), who is an officer with the Hermantown Police Department.  See, Warrant Application, at ¶¶4, 10.  During the interview, the Defendant's daughter stated that the Defendant touched her groin, breast, and butt areas, "3 (three) times within the last 2 (two) years with the last time being approximately the end of this last school year."  Id. at ¶10.

During the interview, the Defendant's daughter reported that her father "took her from where she was sleeping to his bed and 'touched' her while he was on the computer talking with his friends," and that her thirteen (13) year old brother told her that he had viewed "naked pictures of little girls on dad's computer" at the Defendant's residence.  Id. at ¶11.

- 5 -

On July 19, 2006, Hansen interviewed the Defendant's thirteen (13) year old son at First Witness, who reported that he had used his father's computer, which was located in the Defendant's bedroom, and viewed a file folder on the computer that contained images of an undressed adult male, who was engaged in sexual intercourse with an undressed little girl who appeared to be eight (8) or nine (9) years old. The son also stated that he was allowed to use three (3) of the four (4) computers in the Defendant's residence, but that he was prohibited from using the computer in the Defendant's bedroom. Id. at ¶12.

On that same day, Hansen also interviewed the Defendant's ten (10) year old son, who stated that the thirteen (13) year old son had told him about the image on his dad's computer in the third grade, and that he was currently "going into the fifth grade." Id at ¶13. He also stated that, "around the same time," he viewed "images of teenage girls stripping on his dad's computer," and that "all 4 (four) computers are hooked up together." Id.

Anderson also averred as follows:

> Based upon my experience and knowledge from other investigators and training, it is common for persons involved in pornography to possess home computers for viewing and/or storing images. It is also common for people that are sexually attracted to children to collect nude, sexually suggestive and sexually explicit material

> featuring children.  It is also common to keep photographs, diaries or other records of encounters surrounding the obsession of having sex with minors.

Id. at ¶14.

The Receipt, Inventory, and Return, provided that the Search Warrant was executed on July 20, 2006, at 9:46 o'clock a.m.  See, Search Warrant, at pp. 2-4.  At that time, law enforcement searched the Defendant's residence, and took a number of items into custody, which included:  a variety of computer storage media, a digital camera with flash drives and "misc. hookups," an internet service provider agreement, indicia of occupancy, a notebook, four (4) computer hard drives, computer systems, wireless connection hardware, a cellular phone, and a "CW Shredder" CD, as well as a number of assorted VCR tapes and CD discs.  Id.  The government represents that a "forensic examination of the defendant's computer revealed hundreds of videos and images of child pornography."   See, Government's Response to Defendant's Motion to Suppress, at p. 3.

At the Hearing, the Defendant advised that there was no challenge to the Search Warrant other than on its "four corners," but he encouraged the Court to pay particular attention to the issue of staleness, as well as the inapplicability of the "good faith exception," as enunciated in United States v. Leon, 468 U.S. 897 (1984).

- 7 -

III.  Discussion

The Defendant has moved to suppress the evidence that was seized during the execution of a Search Warrant at his residence in Hermantown, Minnesota.  As noted, the Defendant contends that the information, which is contained in the Search Warrant Application, and Supporting Affidavit, was impermissibly stale, and therefore, that the Warrant was not supported by probable cause.  In addition, the Defendant urges that the Warrant is so bereft of probable cause as to preclude any good faith reliance, by law enforcement, upon that Warrant.

A.     Standard of Review.  In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband.  See, Warden v. Hayden, 387 U.S. 294 (1967); United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996).  In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place. See, United States v. Grubbs, 547 U.S. 90, --, 126 S.Ct. 1494, 1499 (2006)("Probable

- 8 -

cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"), quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983).   For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, supra at 232; see also, <u>Ornelas v. United States</u>, 517 U.S. 690, 695 (1996).

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'" <u>United States v. Ryan</u>, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting <u>United States v. Goodman</u>, 165 F.3d 610, 613 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999).   In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis. See, <u>United States v. Anderson</u>, 933 F.2d 612, 614 (8th Cir. 1991); <u>Technical Ordnance, Inc. v. United States</u>, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002).   Moreover, the reviewing Court must not engage in a <u>de novo</u> review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant.   See, <u>United States v. Maxim</u>, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); <u>United States v. Curry</u>, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991).   This mandated

deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to Warrants.  See, Illinois v. Gates, supra at 236.

"Probable cause must exist **at the time the search warrant is issued**." United States v. Gettel, 474 F.3d 1081, 1986 (8th Cir. 2007);  United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005); see, United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir. 1995).  Therefore, a lapse of time, between the observations of a witness and the issuance of a Search Warrant, like a delay in executing a Search Warrant, "may make probable cause fatally stale."  United States v. Maxim, supra at 397 [quotations omitted]; see also, United States v. Gettel, supra at 1086.

"There is no bright-line test for determining when information is stale," and the passage of time, alone, is "not always the controlling factor," as other factors, such as "the nature of the criminal activity involved and the kind of property subject to the search," are also relevant to the inquiry.  Id., quoting United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993); United States v. Gettel, supra at 1086; United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992); see also, United States v. Kennedy, supra at 1141; United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002).  As but one example, when the Affidavit alleges an "ongoing continuous criminal enterprise, the

passage of time between the receipt of information and the search becomes less critical in assessing probable cause." United States v. Rugh, supra at 754. "[The] vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit," for "[t]ime factors must be examined in the context of a specific case and the nature of the crime under investigation." United States v. Gleich, 397 F.3d 608, 613 (8th Cir. 2005), quoting United States v. Koelling, supra at 822.

Furthermore, "'where recent information corroborates otherwise stale information, probable cause may be found.'" United States v. Ozar, supra at 1446, quoting United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990), cert. denied, 498 U.S. 1031 (1991). "[T]he lapse of time is least important * * * when the [evidence of criminal activity] is not likely to be destroyed or dissipated." United States v. Gleich, supra at 613, quoting United States v. Horn, 187 F.3d 781, 786 (8th Cir. 1999), cert. denied, 529 U.S. 1029 (2000), citing, in turn, United States v. Koelling, supra at 822-823.

B.   Legal Analysis.   The Defendant argues that the "information within the affidavit purporting to establish probable cause is stale." Defendant's Memorandum in Support of Motion to Suppress, Docket No. 28, at p. 3. Specifically,

the Defendant asserts that the statements by the Defendant's children, which are recounted in Anderson's Affidavit, do not provide any specific dates and, in any event, those dates relate to events which occurred "over two years" before the issuance of the Search Warrant which, he contends, warrants a determination of staleness. Id. at pp. 3-4. The Defendant also contends that the lack of any "temporal reference point" renders any of the related showings of probable cause insufficient to support the issuance of a Search Warrant and, to support that proposition, he cites authority from the United States Court of Appeals for the Sixth Circuit. Id. at pp. 5-6, citing United States v. Hython, 443 F.3d 480, 485 (6th Cir. 2006)(finding Affidavit offered in support of Search Warrant was stale, by noting that the sale of drugs, out of a residence, is not inherently an ongoing activity, and that, as a consequence, the Affidavit lacked a temporal reference point).

In response, the Government argues that the information, which is supplied in Anderson's Affidavit, was not stale, when viewed in the totality of the information that had been garnered by law enforcement, and urges that Anderson's averment, which recounts his professional training and experience, persuasively establishes that it is commonplace for persons, who are involved in pornography, to store and preserve images, diaries, or other records, which depict or describe sexually explicit material

involving minors, for long periods of time.  Given the apparent unanimity of the

Circuits, that child pornographers hoard their images of child pornography for lengthy

periods of time, Anderson's prior experience, and his opinions that are predicated on

that experience, are commonly held.  See, e.g., United States v. Shields, 458 F.3d 269,

279 n. 7 (3rd Cir. 2006)("We have noted that collectors of child pornography often

store their material and rarely discard it."), citing United States v. Harvey, 2 F.3d

1318, 1322 (3rd Cir. 1993); United States v. Irving, 452 F.3d 110, 125 (2nd Cir. 2006)

("When a defendant is suspected of possessing child pornography, the staleness

determination is unique because it is well known that 'images of child pornography

are likely to be hoarded by persons interested in those materials in the privacy of their

homes.'"), quoting United States v. Lamb, 945 F. Supp. 441, 460 (N.D.N.Y. 1996)

(citing cases); United States v. Watzman, 486 F.3d 1004, 1008 (7th Cir. 2007)

("Moreover, we previously have concluded that '[i]nformation a year old is not

necessarily stale as a matter of law, **especially where child pornography is

concerned**.")[emphasis in original], quoting United States v. Newsom, 402 F.3d 780,

783 (7th Cir. 2005); United States v. Riccardi, 405 F.3d 852, 861 (10th Cir. 2005)("This

proposition is not novel in either state or federal court:  pedophiles, preferential child

molesters and child pornography collectors maintain their materials for significant periods of time.").

Nonetheless, the mere fact that child pornography is alleged in support of a Search Warrant does not vitiate our obligation to question the staleness of those allegations.  Here, in fact, were our analysis myopic, such that we were only to view the evidence that, two (2) years or more previously, the Defendant's sons observed, on separate occasions, child pornography on one (1) of the Defendant's computers, we could agree with the Defendant that the factual underpinnings of the Search Warrant, that he here challenges, might be impermissibly outdated.  Unlike the Defendant, however, our vision is not short-sighted, as we are obligated to assess the totality of the circumstances, that are presented in Anderson's Affidavit in support of the issuance of the Warrant.

Unquestionably, we would prefer a more substantial showing of probable cause, but our duty is to assess all of the information presented to the issuing Judicial Officer, and not evidence that we would have preferred to have been submitted.  We have no basis to overlook, and the Defendant does not offer one, that, a month or so prior to the issuance of the Warrant, the Defendant sexually abused his juvenile daughter by

impermissible sexual touching.[3] Nor can we disregard that he committed the same offense on two (2) prior occasions over the course of two (2) years, and that, on one occasion,[4] he was simultaneously "on the computer talking with his friends." <u>Warrant Application</u>, at ¶¶10-11.

We find it no stretch to reasonably infer that a father who would sexually molest his own daughter, when he thought that she was sleeping, and while he was communicating with his computer friends, would maintain pornographic depictions

---

[3]The Warrant in question was issued on July 20, 2006, and the Defendant's daughter related, one day before that issuance, that her father had sexually abused her "3 (three) times within the last 2 (two) years with the last being approximately the end of the last school year." <u>Warrant Application</u>, at ¶10. Applying common sense, we infer that the Defendant's daughter was last abused by the Defendant a month, or in any event, less than two (2) months before the Warrant issued.

[4]One reading of the Warrant Application would suggest that, on the last such occasion, the Defendant's daughter was sexually touched by him, while he was talking to friends on his computer, since this averment follows the paragraph in which the last such touching is asserted to have occurred "approximately" at "the end of this last school year." See, <u>Warrant Application</u>, ¶¶ 10-11. Such a reading could also be bolstered by the brother's recounting that, "approximately 2 weeks ago," the Defendant's daughter had told him that the Defendant "has carried her into his bed after she falls asleep during visitation, * * * and touches her." <u>Id.</u> at ¶8. The plain language of Anderson's averments, however, does not conclusively establish that the last sexual touching was accompanied by the Defendant's communicating with friends on his computer. Accordingly, we take the cautious approach and attribute the Defendant's simultaneous touching, and computer talking, to one such occasion, and not necessarily the last. We do note, however, that the recountings of the Defendant's children appear to be cross-corroborating.

of female children on his computer.   As we observed, in <u>United States v.</u> <u>Winningham</u>, 953 F. Supp. 1068, 1079 (D. Minn. 1996), "we believe the inference to be reasonable that [a pedophile] * * * would continue to accumulate child pornography through the date the Warrant issued, that was first observed in his personal effects just six weeks previously."  Citing, <u>United States v. Byrd</u>, 31 F.3d 1329, 1339 (5ᵗʰ Cir. 1994), cert. denied, 514 U.S. 1052 (1995)("In addition to citing the case law and expert testimony that links pedophilia to child pornography, we also note that common sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography.").   These observations are consistent with Anderson's opinions, as expressed in the Warrant Application.  See, <u>Warrant Application</u>, at ¶14.

While we cannot exclude the possibility that, between the time when the Defendant's sons observed different depictions of child pornography on the Defendant's computer, and the last occasion that the Defendant molested his daughter, he deleted those images, nevertheless, we deal, here, with probabilities and not certainties.[5]  See, <u>United States v. McAtee</u>, 481 F.3d 1099, 1103 (8ᵗʰ Cir. 2007)

_____

[5]Another anomaly in computer technology can impact upon the staleness analysis.  As the Court observed, in <u>United States v. Toups</u>, 2007 WL 433562 at *4

(continued...)

("Probable cause requires only a 'fair probability,' and not a certainty that contraband will be found at the premises to be searched, and the affidavit provided substantial evidence of probable cause."), citing Illinois v. Gates, supra at 246; United States v. Leppert, 408 F.3d 1039, 1042 (8th Cir. 2005)(same).

As a consequence, we conclude that the more recent incidents of asserted sexual abuse freshen the older observations, by the Defendant's sons, of child pornography

---

[5](...continued)
(M.D. Ala., February 6, 2007):

> Further bolstering the conclusion that the staleness calculation is unique when it comes to cases of internet child pornography is the images and videos stored on a computer are not easily eliminated from a computer's hard drive. The mere deletion of a particular file does not necessarily mean that the file cannot later be retrieved. See, e.g., United States v. Eberle, No. CRIM. 05-26, 2006 WL 1705143, at *1 (W.D. Pa. June 15, 2006)(noting that even when a computer has been "wiped," where "all files and data associated with a prior user from a hard drive [are deleted]," the data may still be retrieved through forensic procedures); United States v. Fazio, 1:05CR00014ERW (LMB), 2006 WL 1307614, at *9 (E.D. Mo. May 9, 2006) ("Even when * * * files have been 'deleted,' they are not really permanently removed from the computer but can be recovered months or years later.").

We do not base our Recommendation on this anomaly, however, as the Record before us offers no competent basis to do so.

- 17 -

on their father's computer.  In the context of child pornography, our Court of Appeals has found probable cause to warrant a search where even longer periods of time separate older evidence of contraband, with more recent indicia that illegal evidence would be found by a warranted search.  See, <u>United States v. Chrobak</u>, supra at 1046 (evidence of child pornography having been transmitted some three months (91 days) prior to the execution of a Warrant was a sufficient, and not too stale, showing of probable cause); <u>United States v. Horn</u>, supra at 786-87 ("Furthermore, there was a fair probability that if he had received child pornography from the woman in Texas, it would still be in his possession even three or four months later.").  Here, we are persuaded that the showings before the issuing State Court Judge were adequate to demonstrate that the Defendant's suspected criminal activity was continuing in nature, for at least two (2) years, and that the fruits of that activity were not likely to be destroyed or dissipated.  <u>United States v. Koelling</u>, supra at 822-23.  As such, the State Court Judge "could find a fair probability that [the Defendant] had child pornography at his home" at the time the Warrant issued.  <u>United States v. Chrobak</u>, supra at 1046.

Viewed in totality, the averments contained in Anderson's Affidavit presented the issuing State Court Judge with a fair probability that depictions of child

pornography would likely be found on the Defendant's computer.[6]  The reports of

such depictions, as described by the Defendant's sons, leave little doubt that sexual

photographs, or videos, of underage children, who were engaged in sexual activities,

had been observed on the Defendant's computer.  Those observations provide a

sufficient nexus between the Defendant, and the computers to be searched, so as to

authorize a search, and the Defendant draws no other constitutional deficiency in the

Warrant to our attention, and our independent review has failed to uncover one.  As

a consequence, we find that the Search Warrant being challenged was supported by

---

[6]The Defendant asserts that "[t]here is no indication that the computer being sought is the same computer that J.L.F. [i.e., the Defendant's son] spoke of in his statement."  We do not find the absence of such an averment to undermine the legitimacy of the Warrant.  Given the totality of the circumstances, as presented in Anderson's Affidavit, we are persuaded that, having had four (4) computers in his household, the Defendant would likely have a computer containing child pornography at the time that the Warrant issued.  As Anderson averred, "it is common for persons involved in pornography to possess home computers for viewing and/or storing images," "[i]t is also common for people that are sexually attracted to children to collect nude, sexually suggestive and sexually explicit material featuring children," and "[i]t is also common to keep photographs, diaries or other records of encounters surrounding the obsession of having sex with minors."  Warrant Application, at ¶14.  As fortified by the assertion, by the Defendant's daughter, that on one sexual touching occasion, the Defendant was simultaneously talking with friends on the computer, we conclude that there was sufficient probable cause to believe that a computer in the Defendant's residence would contain images of child pornography.

an adequate showing of probable cause, that the showings of probable cause were not impermissibly stale, and that the Defendant's Motion to Suppress should be denied.

Lastly, even if the information in the Search Warrant were insufficient to establish probable cause, we would be compelled, by the law of this Circuit, to find that the officers' reliance upon the Search Warrant was reasonable, because the Warrant was "not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon." United States v. McNeil, 184 F.3d 770, 775 (8th Cir. 1999), citing United States v. Leon, supra at 922-23.   Under Leon, the exclusionary rule does not apply to evidence that is discovered through the execution of a subsequently invalidated Search Warrant, so long as the officer's reliance on the Warrant was objectively reasonable.  Id.  The Leon Court went on to identify four circumstances under which an officer's reliance on a Warrant would be unreasonable:

> (1)     the affiant included information in the affidavit that he "knew was false or would have known was false except for his reckless disregard of the truth" and that information misled the issuing judicial officer;

> (2)     the issuing judge abandoned his neutral judicial role;

> (3)     the warrant was based on an affidavit with so few indicia of probable cause that an official belief in its validity would be unreasonable; and

- 20 -

> (4)    the warrant itself was so "facially deficient * * * that
> the executing officers" could not reasonably rely on its
> validity.

United States v. Simpkins, 914 F.2d 1054, 1057 (8th Cir. 1990), cert. denied, 498 U.S.
1101 (1991), citing United States v. Leon, supra at 923.

Here, there is not the slightest suggestion that there was any "reckless disregard for

the truth," or that the issuing Judicial Officer was less than neutral in issuing the

Warrant to search the Defendant's residence.  Consequently, we turn to Anderson's

Affidavit, and the Search Warrant itself, in order to determine whether the Warrant

was so "facially deficient," or "so lacking in indicia of probable cause as to render

official belief in its existence entirely unreasonable." United States v. Leon, supra at

923.

In applying the "so lacking" standard, our Court of Appeals has recognized that

"'[e]ntirely unreasonable' is not a phrase often used by the Supreme Court, and we

find nothing in Leon or in the Court's subsequent opinions that would justify our

dilution of the Court's particularly strong choice of words." United States v.

Carpenter, 341 F.3d 666, 670 (8th Cir. 2003).  As such, "good faith may exist when a

minimal nexus between the place to be searched and the suspected criminal activity

is established." See, United States v. Gonzalez, 399 F.3d 1225, 1231 (10th Cir. 2005),

citing United States v. Carpenter, 360 F.3d 591, 596 (6th Cir. 2004).   This is

necessarily a minimal standard, as "[o]rdinarily, a police officer cannot be expected to question a judge's probable cause determination."  United States v. Gibson, 928 F.2d 250, 253 (8th Cir. 1991); see, e.g., United States v. Van Shutters, 163 F.3d 331, 336-38 (6th Cir. 1998)(finding that the "good faith" exception applied even where the Supporting Affidavit "completely neglect[ed] to indicate why the affiant believed that [the defendant] himself had any connection with the" residence in the Search Warrant); United States v. Carpenter, supra at 595-96 (Supporting Affidavit was not "completely devoid" of a nexus, where it noted that marijuana was growing near the residence, and that there was a path from the residence to the location of the marijuana).  Here, an experienced State Court Judge found Anderson's averments sufficient to authorize the issuance of a Search Warrant, and we have substantial doubt that the executing officers can be held to a higher standard, at least in the absence of evidence that the State Court Judge was duped, consciously misled, or thoroughly oblivious to the requisites of the Fourth Amendment.

However, the "good faith" exception may not apply where the Supporting Affidavit completely fails to explain any connection between the place to be searched, and the suspect, or the suspected criminal activity.  See, e.g., United States v. Gonzalez, supra at 1231 (finding "good faith exception to be inapplicable where the

Supporting Affidavit "completely fail[ed] to explain why the detective believed that the items sought would be found at" the place to be searched); United States v. Hove, 848 F.2d 137, 139-40 (9th Cir. 1988)(finding that "good faith" exception did not apply where the Supporting Affidavit failed to link place to be searched to the defendant, or explain why the officers believed that incriminating evidence would be found there).

Here, there is no assertion that law enforcement attempted to deceive the Judicial Officer into issuing the Warrant for the Defendant's residence. Moreover, despite the Defendant's argument that a "temporal reference point" was lacking in the Warrant Application, we find that the statements, which were offered by the Defendant's sons, that they had viewed child pornography on the Defendant's bedroom computer over the previous couple of years, as well as the statement of the Defendant's daughter that, as recently as "the end of the last school year," Warrant Application, at ¶10, she had been sexually touched by the Defendant and, on one occasion, while he was on his computer, undergirds an objectively reasonable reliance upon the Search Warrant by the executing officers.

Indeed, the "good faith" issue is laid to rest by our Court of Appeals decision in United States v. Rugh, supra at 753-54, where, notwithstanding the fact that the contested Warrant was only supported by "sixteen-month-old information," which the

- 23 -

Court recognized as being "stale," the Court agreed with the Trial Court that "the officers reasonably could have believed the material from 1988 would still be present because pedophiles typically retain child pornography for a long time." Id.   Here, a much shorter period of time is involved, and we conclude that, based on the totality of the evidence, the searching officers' reliance on the Search Warrant was entirely in good faith.   Accordingly, even if we concluded that the Warrant was deficient in its showing of probable cause -- which is not the case, here -- the Defendant's Motion to Suppress should be denied on Leon grounds.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's oral Motion to Suppress Evidence Obtained as a Result of a Search or Seizure be denied.

Dated: June 29, 2007                    s/Raymond L. Erickson
                                        Raymond L. Erickson
                                        CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

- 24 -

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 17, 2007**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 17, 2007**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.